UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ARMANDO PASCUAL REYES, *individually and on behalf of others similarly situated,*

                      *Plaintiffs*,

    -against-

COPPOLA'S TUSCAN GRILL, LLC (d/b/a COPPOLA'S WEST), SALVADOR COPPOLA, LUIS MENDIEPA AND MARIANO OUAPA,
                      *Defendants.*
-------------------------------------------------------X

21-cv-7040

**DECLARATION OF CLELA ERRINGTON IN SUPPORT OF PLAINTIFF'S MOTION FOR <u>DEFAULT JUDGMENT</u>**

Clela Errington, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I represent Plaintiff in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

2. I submit this affirmation in support of Plaintiff's application for a default judgment against COPPOLA'S TUSCAN GRILL, LLC (d/b/a COPPOLA'S WEST), SALVADOR COPPOLA, LUIS MENDIEPA AND MARIANO OUAPA.

<u>Procedural History</u>

3. Plaintiff commenced this action by filing the Complaint (and associated documents) on August 20, 2021. A true and accurate copy of the Complaint is attached hereto as **Exhibit 1.**

4. This is an action for unpaid minimum and overtime wages, spread of hours pay, under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. *See* Exhibit 1.

5. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over

the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* Exhibit 1.

6. A summons and copy of the Complaint was properly served on Defendant Salvador Coppola on August 26, 2021. A true and accurate copy of the affidavit of service is attached hereto as **Exhibit 2.**

7. A summons and copy of the Complaint was properly served on Luis Mendiepa. on August 26, 2021. A true and correct copy of the affidavit of service is attached hereto as **Exhibit 3.**

8. A summons and copy of the Complaint was properly served on Defendant Mariano Ouapa on August 26, 2021. A true and correct copy of the affidavit of service is attached hereto as **Exhibit 4.**

9. A summon and copy of the Complaint was properly served on Defendant Coppola's Tuscan Grill, LLC on January 26, 2022. A true and correct copy of the affidavit of service is attached hereto as **Exhibit 5.**

10. Upon information and belief, Defendants are neither an infants nor incompetent persons nor in the active service of the United States military.

11. The Clerk of the Court noted default against Defendant Salvador Coppola on March 1, 2022 A true and correct copy of the Certificates of Default is attached as **Exhibit 6.**

12. The Clerk of the Court noted default against Defendant Luis Mendiepa on March 1, 2022. A true and correct copy of the Certificates of Default is attached as **Exhibit 7**

13. The Clerk of the Court noted default against Defendant Mariano Ouapa on March 1, 2022. A true and correct copy of the Certificates of Default is attached as **Exhibit 8.**

14. The Clerk of the Court noted default against Defendant Coppola's Tuscan Grill LLC on March 2, 2022. A true and correct copy of the Certificates of Default is attached as **Exhibit 9.**

15. The Declaration of Armando Pascual Reyes ("Plaintiff Declaration") in support of this motion for default judgment is annexed as **Exhibit 10**.

16. No part of the judgment sought has been paid.

Statement of Facts Supporting Entry of Judgment

17. As alleged in the Complaint, Amended Complaint, and as stated in Plaintiff's Declaration, Defendants control an Italian Restaurant on the Upper West Side of Manhattan, New York. (Complaint ¶ 2).

18. Plaintiff is a former employee of Defendants. (Complaint ¶ 40).

19. Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiffs, compensation. (Complaint ¶ 37).

20. Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce. (Complaint ¶ 39).

21. Upon information and belief, from approximately 2017 until on or about 2021 Defendants had a gross volume of sales that exceeded $500,000. (Complaint ¶ 38),

22. Defendants regularly required Plaintiff to work without paying him minimum wage and overtime compensation (Complaint ¶ 16).

Armando Pascual Reyes

23. Plaintiff Armando Pascual Reyes ("Plaintiff") was employed as a porter and ostensibly as a delivery worker by Defendants from approximately October 2017 until on or about July 19, 2021. (Complaint ¶ 43, Plaintiff Declaration ¶ 8).

24. Plaintiff's work did not require discretion or independent judgment. (Complaint ¶ 47, Plaintiff Declaration ¶ 9).

25. From approximately October 2017 until on or about March 2020, Plaintiff Pascual Reyes worked from approximately 10:00 a.m. until on or about 8:30 p.m., six days a week (typically 63 hours per week). (Complaint ¶ 48, Plaintiff Declaration ¶ 10).

26. From approximately March 2020 until on or about June 2021, Plaintiff Pascual Reyes worked from approximately 10:00 a.m. until on or about 8:30 p.m. five days a week (typically 52.5 hours per week). (Complaint ¶ 49, Plaintiff Declaration ¶ 11).

27. From approximately June 2021 until on or about July 19, 2021, Plaintiff Pascual Reyes worked from approximately 10:00 a.m. until on or about 4:00 p.m. five days a week (typically 30 hours per week). (Complaint ¶ 50, Plaintiff Declaration ¶ 12).

28. Throughout Plaintiff's entire employment, Defendant paid him his wages by cash or personal check. (Complaint ¶ 51, Plaintiff Declaration ¶ 14)

29. From approximately October 2017 until on or about July 19, 2021, defendants paid Plaintiff Pascual Reyes a fixed salary of $75 per day. (Complaint ¶ 52, Plaintiff Declaration ¶ 13)

30. Defendants did not pay Plaintiff for three weeks that he worked from March to April 2020. (Complaint ¶ 53, Plaintiff Declaration ¶ 17)

31. Defendants withheld approximately $770.00 in tips that Plaintiff earned during his last week or work. (Complaint ¶ 54, Plaintiff Declaration ¶ 18)

32. Plaintiff Pascual Reyes's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. For example, from approximately October 2017 until on or about June 2021, Defendants required Plaintiff Pascual Reyes to work an additional 4 to 5 hours past his scheduled departure time every day, and did not pay him for the additional time he worked. (Complaint ¶ 56, Plaintiff Declaration ¶ 13)

33. Although Defendants allegedly granted Plaintiff Pascual Reyes 30-minute meal periods, they always required him to go back to work only 5 to 10 minutes into those breaks. (Complaint ¶ 57, Plaintiff Declaration ¶ 19)

34. Plaintiff Pascual Reyes was never notified by Defendants that his tips were being included as an offset for wages. (Complaint ¶ 58, Plaintiff Declaration ¶ 20)

35. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Pascual Reyes's wages. (Complaint ¶ 59, Plaintiff Declaration ¶ 21)

36. Defendants withheld a portion of Plaintiff Pascual Reyes's tips; specifically, Defendants withheld the sum of $770 that Plaintiff Pascual Reyes had earned in tips. (Complaint ¶ 60, Plaintiff Declaration ¶ 18)

37. Plaintiff Pascual Reyes was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device, such as sign in sheets or punch cards, that accurately reflected his actual hours worked. (Complaint ¶ 61 Plaintiff Declaration ¶ 23)

38. Defendants required Plaintiff Pascual Reyes to sign a document, which had false number of hours worked and amount of pay he received, in order to release his weekly pay. (Complaint ¶ 62 Plaintiff Declaration ¶ 25)

39. On a number of occasions, Defendants required Plaintiff Pascual Reyes to sign a

document, which falsely stated that he was receiving an hourly rate equal to or higher than the minimum wage rate required by New York labor law. (Complaint ¶ 63 Plaintiff Declaration ¶ 25)

40. Defendants did not provide Plaintiff Pascual Reyes with any document or other statement accounting for his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Complaint ¶ 64 Plaintiff Declaration ¶ 24).

41. Defendants did not provide Plaintiff an accurate statement of wages, as required by NYLL 195(3). (Complaint ¶ 65 Plaintiff Declaration ¶ 24).

42. Defendants did not provide Plaintiff with any written notice of his rate of pay in English and in Spanish (his primary language) of his employer's regular pay day and other information required by NYLL §195(1). (Complaint ¶ 66, Plaintiff Declaration ¶ 25).

43. Defendants required Plaintiff to purchase "tools of the trade" with his own funds – including three electric bicycles and a helmet, in the amount of $5,150.00 (Complaint ¶ 50, Plaintiff Declaration ¶ 27).

Plaintiffs are entitled to Judgment by Default

44. It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

45. Defendants have failed to file an answer or otherwise respond to the Amended Complaint, despite the time to do so have expired.

46. Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

47. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

48. Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward, damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $184,569.07, and attorneys' fees and costs should be awarded in the amount of $.

Plaintiff's Damages Calculation

49. Annexed as **Exhibit 11** is a chart setting out the damages Plaintiff is entitled to recover.

50. In the damages chart, the Plaintiffs' wage and hour damages (including unpaid wages, overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates

the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiffs' affidavit. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

51. Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiff should have been paid per week during each pay period. The actual formula used in this column is as follows:((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

52. The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiff is entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to Plaintiff (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% for damages occurring prior to April 9, 2011, if any, and 100% for any subsequent damages.

53. The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage). The liquidated damages on SOH pay are all calculated at the rate of 100%.

54. The legal basis for the damages calculations within the chart are set out below.

Back Pay

55. At all times relevant to the FLSA claims in this action, the minimum wage rate under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C. § 207(a)(1). From 2011 to 2013, the minimum wage under New York law was the same as under the FLSA.

56. The New York Minimum Wage for businesses with ten or more employees in New York City was $11.00 per hour as of December 31, 2016. It increased to $13.00 per hour as of December 31, 2017. It increased to $15.00 per hour as of December 31, 2018.

57. New York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-and-one-half times the regular normal rate for each hour over forty hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

58. The onus is on the employer to maintain proper records of employees' hours worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants, [P]laintiffs' recollection and estimates of hours worked are presumed to be correct." Zeng Liu v. Jen Chu Fashion Corp, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the Plaintiff's estimates of hours worked).

> An employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated[,] and if he produces sufficient evidence to show the amount and extent of that work by just and reasonable inference. The burden then shifts to the employer to

9

come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946), and other cases).

59. Here, Plaintiff was not paid minimum wage and overtime compensation at the lawful rate. Rather, defendants paid a fixed daily salary. When divided by the hours that Plaintiff worked, this resulted in him being paid below the statutory minimum wage. *See* Exhibit 11.

60. Defendants were not entitled to take a tip credit for the following because 1) Defendants were not entitled to a tip credit because Plaintiff's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146). 2) Defendants failed to inform Plaintiff that Defendants intended to take a deduction against his earned wages for tip income, as required by the NYLL before any deduction may be taken. 12 NYCRR 146-1.3.

61. Furthermore, during certain times during his employment, Plaintiff was paid at a wage that is lower than the minimum cash wage amount the employers in New York City are required to pay tipped workers. 12 NYCRR 146-1.3.

62. The Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for

each period, then dividing that amount by 40 pursuant to 12 NYCRR §146-3.5, which sets forth this standard for calculating effective hourly rate for employees in the hospitality industry who were unlawfully paid a fixed weekly salary. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavits. *See* Ex. 11

63. Plaintiff is entitled to unpaid minimum wages and overtime compensation in the amount of $107,603.88.

64. As of March 4, 2022, Plaintiff is entitled to $24,748.59 in prejudgment interest on wages and overtime. *See* Exhibit 9.

## Spread of Hours Pay

65. Plaintiff is also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours. 12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL 3578781 (S.D.N.Y. Aug. 2, 2012).

66. As set out above, Plaintiff routinely worked more than 10 hours per day during his employment with the Defendants.

67. Plaintiff is entitled to $15,309.00 in unpaid spread of hours pay. As of March 4, 2022, Plaintiff is entitled to $3,566.09 in prejudgment interest on the unpaid spread of hours pay. *See* Exhibit 11

## Three Year Statute of Limitations Under FLSA

68. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

69. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999);   v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

70. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal. See Hardrick, 63 F. Supp. 2d at 904.

71. Moreover, the Defendants failed to post the required information concerning the minimum wage laws and paid the Plaintiff in cash without any sort of pay stub or receipt.

72. This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

73.     As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from April 8, 2013, three years before the complaint was filed.  See, e.g., <u>Decraene v. Neuhaus (U.S.A.), Inc.</u>, 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005).  Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness.  N.Y. Labor Law § 663(3).  Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  See <u>Godlewska v. Human Dev. Assoc., Inc.</u>, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006).  Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

Wage Notice and Statement Violations

74.     Defendants never provided Plaintiff with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

75.     Plaintiff is thus entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00.

Liquidated Damages

76.     Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages").  The employer can make this award discretionary, however, by a showing of good faith.  29 U.S.C. § 260.  In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is

mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

77. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

78. Given the uncontroverted evidence of Defendants' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

79. Plaintiff's total unpaid wages equal $107,603.88, all incurred after April 9th, 2011. Thus, he is entitled to 100% liquidated damages in the amount of $107,603.88. See Exhibit 11.

80. Plaintiff's total unpaid spread of hours pay equal $15,309.00. They are entitled to 100% liquidated damages in the amount of $15,309.00. See Exhibit 11.

Attorneys' Fees and Costs

81. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

82. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs in the amount of $4,887.00.

83. The costs are a total of $ 727.00 including a filing fee of $400.00 and fees associated with serving the Defendants with the summons and complaint.

84. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as **Exhibit 12**.

85. The timekeepers on this matter are indicated by the following initials and have the following rates:

    a. "CE" – Clela Errington - $350 per hour
    b. "PL" – Paralegal work, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

   i. Clela A. Errington is an associate at CSM LEgal P.C.

   She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., and joined her current firm in 2020.

Conclusion

86. Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $184,842.20 for unpaid minimum and overtime wages and damages, spread of hour pay and damages, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

87. A proposed judgment is attached as **Exhibit 13.**

88. Additionally, Plaintiff is entitled to $4,821.00 in attorneys' fees and costs. See Exhibit 12.

89. As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

90. No part of the judgment sought has been paid.

91. Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

92. Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

93. Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

94. The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

95. For the reasons stated above and in the accompanying exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
       March 21, 2022

/s
Clela Errington, Esq.