UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

ARMANDO PASCUAL REYES,

                               **Plaintiff,**

               **-against-**

COPPOLA'S TUSCAN GRILL, LLC, et al.,

                           **Defendants.**

--------------------------------------------------------------X

**21-CV-07040 (AT)(SN)**

**<u>REPORT AND
RECOMMENDATION</u>**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE ANALISA TORRES:**

      Plaintiff Armando Pascual Reyes sued Coppola's Tuscan Grill, LLC, d/b/a Coppola's West, Salvador Coppola, Luis Mandiepa, and Mariano Ouapa (collectively, the "Defendants") for failing to pay him minimum and overtime wages as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiff also alleged violations of various other NYLL Provisions. Defendants failed to appear in response to Plaintiff's complaint. The Honorable Analisa Torres referred this matter to my docket for an inquest on damages following an entry and order of default against Defendants. Plaintiff submitted his Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"). Defendants failed to respond.

      I find that Defendants are liable for violating the minimum and overtime wage provisions of the FLSA and NYLL, failing to provide spread-of-hours pay, failing to reimburse Plaintiff for tools of the trade, and unlawfully retaining Plaintiff's tips. I recommend Plaintiff be awarded a total of $237,193.50 in damages plus all applicable interest.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 6/13/2023

## BACKGROUND

### I.      Factual Background

"It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (internal quotation marks omitted). Thus, in light of Defendants' default, Plaintiff's properly-pleaded allegations are accepted as true, except those relating to damages. See Cotton v. Slone, 4 F.3d 176, 181 (2d. Cir. 1993). The following findings of fact are based on the complaint's allegations regarding liability.

Plaintiff was employed by all Defendants as a porter and delivery worker from October 2017, to July 19, 2021. Defendants failed to pay Plaintiff at the applicable minimum hourly and overtime rates under the FLSA and NYLL. Defendants also failed to pay Plaintiff a spread-of-hours premium for days in which his spread-of-hours exceeded ten, failed to provide a proper time-of-hiring wage notice and wage statements during each pay period, failed to reimburse Plaintiff for "tools of the trade" he was required to purchase to perform his job, and unlawfully misappropriated Plaintiff's tips. Defendants acted intentionally and in bad faith.

Plaintiff seeks damages for unpaid minimum wage and overtime compensation as well as for Defendants' failure to provide an accurate paystub, spread-of-hours pay and other violations under NYLL as applicable. Plaintiff also seeks liquidated damages, pre-judgment and post-judgment interest, reimbursement for expenses incurred in this action, and attorneys' fees and costs.

### II.     Procedural Background

Plaintiff filed a complaint on August 20, 2021, seeking monetary damages arising out of Defendants' FLSA and NYLL violations. The complaint was served on Defendants on August 31, 2021, and on March 1 and 2, 2022, the Clerk of Court issued certificates of default as to all

Defendants. Plaintiff then moved for default judgment, and on April 28, 2022, the Court issued

an order to show cause, with Defendants' response due by June 28, 2023. Defendants were

served with this order on May 4 and 6, 2023. On June 28, 2022, the Court entered default

judgment against all Defendants.

Thereafter, I directed Plaintiff to file submissions supporting his request for a final

judgment. The Order notified the parties that, absent a request to hold a hearing, the Court would

conduct its inquest regarding damages based solely upon the parties' written submissions.

Plaintiff submitted his Proposed Findings and served them on Defendants. The Court gave

Defendants 30 days to respond. Neither party has requested a hearing on the issue of damages.

To date, Defendants have not appeared in this action.

## DISCUSSION

The Court of Appeals has set forth the procedural rules applicable to the entry of a default

judgment:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when
> there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1-800 Beargram
> Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for
> the entry of judgment against a party who fails to defend: first, the entry of a default,
> and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104
> (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition
> that a defendant has, through its failure to defend the action, admitted liability to
> the plaintiff. . . . The second step, entry of a default judgment, converts the
> defendant's admission of liability into a final judgment that terminates the litigation
> and awards the plaintiff any relief to which the court decides it is entitled, to the
> extent permitted by Rule 54(c).

City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128 (2d Cir. 2011).

## I.    Liability

"Without a response from Defendant, [a] Court must first determine whether, with

respect to each element of his claims, Plaintiff's allegations in the Complaint are sufficiently

'well pleaded' to establish Defendant's liability." Belizaire v. RAV Investigative & Sec. Servs.

Ltd., 61 F. Supp. 3d 336, 346 (S.D.N.Y. 2014) (citing Mickalis Pawn Shop, LLC, 645 F.3d at

137). "Only if the allegations are sufficient to state a claim, should the Court then proceed to

determine the appropriate amount of damages to be awarded." Id.

To plead a FLSA claim, a plaintiff must show, "(1) the defendant is an enterprise

participating in commerce or the production of goods for the purpose of commerce; (2) the

plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship

is not exempted from the FLSA." Pelgrift v. 335 W. 41st Tavern Inc., No. 14-cv-8934 (AJN),

2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Jiaren Wei v. Lingtou Zhengs

Corp., No. 13-cv-5164 (FB)(CLP), 2015 WL 739943, at *5 (E.D.N.Y. Feb. 20, 2005)).

An enterprise engaged in commerce is an enterprise that "has employees handling,

selling, or otherwise working on goods or materials that have been moved in or produced for

commerce by any person" and has an "annual gross volume of sales made or business done . . .

not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

Plaintiff's complaint states that the corporate Defendant was engaged in interstate

commerce as a business that had gross sales over $500,000 per year and purchased and handled

goods that moved outside of New York. "Ordinarily, allegations detailing statutory definitions

without providing additional facts may not be sufficient to infer a nexus to interstate commerce.

In the context of default, however, the Court may accept these uncontested allegations as true

and make reasonable inferences." Singh v. Meadow Hill Mobile Inc., No. 20-cv-3853

(CS)(AEK), 2021 WL 4312673, at *4 (Aug. 9, 2021), adopted, 2021 WL 3862665 (S.D.N.Y.

Aug. 29, 2021); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 33

(E.D.N.Y. 2015) ("[I]t is reasonable to infer that [a restaurant] requires a wide variety of

materials to operate . . . . It is also reasonable to infer that some of these materials moved or were produced in interstate commerce.").

To establish FLSA liability against an individual, that individual must be a plaintiff's employer under the "economic reality" test, which asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984); see also Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 71 (2d Cir. 2003) (clarifying that the Carter factors are not exclusive, and that "economic reality is determined based upon *all* the circumstances"); Pelgrift, 2017 WL 4712482, at *7 (reiterating that "lack of support for one Carter factor is not fatal").

Plaintiff's complaint states that individual Defendant Salvador Coppola was an owner or officer of the corporate Defendant, that Defendants Mandiepa and Ouapa acted as its managers, and that all three individual Defendants determined employee wages and scheduling, had the power to hire and fire, and maintained employee records.

Given the forgoing, Plaintiff has adequately claimed that the corporate Defendant was an enterprise participating in commerce, and that all individual Defendants were his employers under FLSA.

Plaintiff properly claims he was an employee of Defendants for the relevant time period. An employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The burden on plaintiffs to demonstrate their status as employees is low. Fermin, 93 F. Supp. 3d at 32 ("Insofar as Plaintiffs' complaint alleges that Defendants employed Plaintiffs within this statutory meaning, it follows that for purposes of this default, they qualify as employees under

the FLSA.") (cleaned up). Plaintiff, who was employed as a porter and delivery worker, is not exempt from the FLSA's overtime requirement. See Fermin, 93 F. Supp. 3d at 32; see also Galvez v. 800 Ginza Sushi Inc., No. 19-cv-8549 (JPC), 2022 WL 748286 (S.D.N.Y. Mar. 11, 2022) (granting summary judgment on the unpaid overtime claims of delivery workers). Therefore, Plaintiff has adequately claimed he was a non-exempt employee of Defendants for the relevant period.

The definitions of employer and employee are almost identical under NYLL, except an employer is not required to meet a certain minimum in sales to be liable for a violation. See Pelgrift, 2017 WL 4712482, at *7; see also N.Y. Lab. Law §§ 651(5)-(6). Defendants are liable as employers under the FLSA and NYLL because the tests are not meaningfully different. Pelgrift, 2017 WL 4712482, at *7. According to the FLSA and NYLL, Defendants are jointly and severally liable for any damages awarded to Plaintiff. See Pineda v. Masonry Constr., Inc., 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).

Plaintiff alleges Defendants violated the FLSA and NYLL by failing to adhere to rules on minimum wage and overtime wage compensation. He further alleges Defendants violated NYLL's spread-of-hours, wage notice and wage statement, tools of the trade, and gratuity provisions. Id. Because Plaintiff properly alleges an employer-employee relationship with Defendants under both the FLSA and NYLL, I consider Defendants' alleged violations of both statutes.

### A.    Minimum Wage

The Defendants violated the FLSA and NYLL's minimum wage provisions. An employer may not pay an employee less than the statutory minimum wage for each hour the employee worked in any week. 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). New York has an additional minimum wage order applicable to the hospitality industry. See 12 N.Y.C.R.R. § 146-1.1(a)

("Every employer in the hospitality industry must pay to each employee . . . at least the minimum wage rates provided in this Part."). Employees bear the initial burden of proving they were not properly compensated for their work. de Los Santos v. Marte Constr., Inc., No. 18-cv-10748 (PAE)(KHP), 2020 WL 8549054, at *5 (Nov. 25, 2020), adopted, 2020 WL 8549055 (S.D.N.Y. Dec. 17, 2020). "In the context of a default," and where a plaintiff "lack[s] access to the employment records necessary to prove they were not properly compensated" a plaintiff may meet their burden of proof "by relying on recollection alone." Id. (internal quotation marks and citation omitted).

### 1.    Employer Size

Under New York law, the minimum wage rate is determined by the size of the employer. 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a). Plaintiff's complaint does not state Defendants' size. Where a plaintiff's complaint is silent as to the employer's size, district courts have taken varying approaches to determine the proper minimum wage rate to apply in a default judgment. One court determined plaintiffs would be awarded at the minimum wage rate of a large employer because of defendants' default. See Sanchez v. Jyp Foods Inc., No. 16-cv-4472 (JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) ("[I]n light of defendants' default, the Court gives plaintiffs the benefit of the doubt and applies the rate [for large employers]."). Other courts in the district have declined to award plaintiffs the rate of large employers if they do not attest to the number of employees that worked for the defendant. See Anzurez v. La Unica Caridad Inc., No. 20-cv-3828 (JMF)(GWG), 2021 WL 2909521, at *4 (July 12, 2021) (finding plaintiff did not prove their employer employed 11 or more employees and therefore "must be compensated at the rate for small employers"), adopted, 2021 WL 3173734 (S.D.N.Y. July 27, 2021).

The Court joins those who decline to award the rate of large employers absent evidentiary support. Plaintiff does not attest to any facts in the complaint regarding the number of employees

at Defendants' restaurant. Accordingly, the Court recommends Plaintiff be compensated at the rate for small employers. See 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(b).

The minimum hourly wage for small employers in New York City during Plaintiff's employment was $10.50 in 2017, $12.00 in 2018, $13.50 in 2019, and $15.00 in 2020 and 2021.[1] The federal minimum wage for these same periods was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The Court will calculate damages using the New York wage rate because it is higher. See 29 U.S.C. § 218(a) ("No provision of this chapter . . . shall excuse noncompliance with . . . a minimum wage higher than the minimum wage established under this chapter . . . .")

### 2. Regular Rate of Pay

Defendants violated the FLSA and NYLL minimum wage provisions by failing to pay Plaintiff at or above the rate set by the federal and state statutory minimum wages. "To determine the regular rate of pay for restaurant employees, the court must divide the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." Anzurez, 2021 WL 2909521, at *3 (internal quotation marks omitted); see also N.Y.C.R.R. § 146-3.5(b).

Plaintiff worked for Defendants from October 2017 to July 19, 2021, and was paid a flat rate of $75 per day throughout his employment, except for the period from March 16 to April 7, 2020, when he was not paid at all. From October 2017 until March 2020, Plaintiff worked six days per week for a total of 63 hours per week. From March 2020 until June 2021, Plaintiff worked five days a week for a total of 52.5 hours per week. From June 2021 through the end of his employment with Defendants on July 19, 2021, Plaintiff worked five days a week for a total of 30 hours per week.

---

[1] See 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(b); History of the Minimum Wage in New York State, https://dol ny.gov/history-minimum-wage-new-york-state.

Except for the period from October 2017 through December 30, 2017, Plaintiff's presumptive regular rate of pay was less than the applicable New York minimum wage throughout his employment. Thus, he is entitled to backpay for the first 40 hours worked each week during the period from December 31, 2017, through the end of his employment.

### B.    Overtime Compensation

Defendants violated the FLSA and NYLL overtime compensation requirements by failing to pay Plaintiff overtime wages for hours worked in excess of 40 hours a week. Under both the FLSA and NYLL, employees must be paid an overtime premium for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Employees are entitled to be paid at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1); see also 12 N.Y.C.R.R. § 146-1.4.

To state a claim for failure to pay overtime compensation, a plaintiff "must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). An employer who violates 29 U.S.C. § 207 "shall be liable to the employee or employees affected in the amount of their unpaid . . . overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); see also N.Y. Lab. Law § 663(1).

As established above, Plaintiff sufficiently pleaded that he regularly worked in excess of 40 hours per week throughout his employment except for the period from June 2 through July 19, 2021. Because Plaintiff was paid a fixed daily rate, he was not compensated for the hours he worked beyond 40 each week. Thus, Defendants are liable for unpaid overtime wages as well as liquidated damages.

### C.    Spread-of-Hours Pay

Defendants are liable for unpaid spread-of-hours pay under N.Y.C.R.R. § 146-1.6. Spread-of-hours refers to the "length of the interval between the beginning and end of an employee's workday." Id. On each workday that the spread-of-hours is greater than ten, an employee is entitled to one additional hour of pay at the minimum hourly rate. Id. The additional hour of pay is not included in the regular rate of pay when calculating overtime wages because it "is not a payment for time worked or work performed . . . ." Id.

The spread-of-hours regulation applies to employers that are "restaurants." Id. A restaurant is "any eating or drinking place that prepares and offers food or beverage for human consumption . . . ." 12 N.Y.C.R.R. § 146-3.1(b). Coppola's West, where Plaintiff worked, is a restaurant in Manhattan. Accordingly, the spread-of-hours regulation applies to Defendants.

Plaintiff worked six shifts per week exceeding ten hours a day from October 2017 through March 15, 2020. Plaintiff worked five shifts per week exceeding ten hours a day from March 16, 2020, through June 1, 2021. Because Plaintiff was paid a fixed daily rate, he was not compensated with an extra hour of pay at the minimum hourly rate for days his spread-of hours exceeded ten. Thus, Defendants are liable for unpaid spread-of-hours pay.

### D.    Wage Statement, Notice, and Record Keeping Requirements

The Wage Theft Prevention Act requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. See N.Y. Lab. Law §§ 195(1)(a), 195(3). Section 195(1) requires an employer to provide employees a notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ." N.Y. Lab. Law § 195(1)(a).

Section 195(3) requires that employers provide employees with certain wage statement information "with every payment of wages." N.Y. Lab. Law § 195(3). An employer's failure to comply with either section of the law makes them liable for damages for each instance that the violations occurred or continued to occur. See N.Y. Lab. Law § 198(1-b) (stating that damages for wage notice violations under § 195(1) accumulate at a rate of $50 per day, but not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at a rate of $50 per day but may not exceed $5,000).

Plaintiff sufficiently pleaded that Defendants failed to comply with NYLL § 195(1)(a) and § 195(3). Plaintiff nevertheless lacks standing to maintain these claims. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).

To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). While a so-called "informational injury" (i.e., failure to receive required information) can give rise to standing, see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214 (2021), the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the information "beyond bringing [this] lawsuit," Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (first quoting TransUnion, 141 S. Ct. at 2214, then Laufer v. Looper, 22 F.4th 871, 881 (10th Cir. 2022)). Plaintiff fails to allege an injury in fact sufficient to confer standing and has not demonstrated how his lack of notice resulted in an

injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations. Nor has Plaintiff identified an informational injury with consequences beyond this lawsuit. Accordingly, Plaintiff cannot recover under NYLL wage notice and statement provisions.

### E.    Tools of the Trade

Plaintiff claims Defendants violated the FLSA and NYLL by failing to reimburse him for expenses related to tools-of-the-trade. Under the FLSA, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," a violation occurs in any week "when the cost of such tools . . . cuts into the minimum or overtime wages required to be paid him under the Act." 29 C.F.R. § 531.35; see also 12 N.Y.C.R.R. § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage.").

Defendants required Plaintiff to purchase three electric bicycles and a helmet over the course of his employment to perform his job duties, and Plaintiff was already being paid below the required minimum wage throughout the vast majority of his employment. Thus, Defendants are liable for the full amount Plaintiff was required to spend on these tools.

### F.    Gratuities

Plaintiff alleges that Defendants violated NYLL by withholding approximately $770.00 in tips that Plaintiff earned during his last week of work. NYLL § 196-d makes it unlawful for any employer to "retain any part of a gratuity or of any charge purported to be a gratuity for an employee." See also 12 N.Y.C.R.R. § 146-2.18. Thus, Defendants are liable for these unlawfully withheld gratuities.

## II.    Damages

Once liability is established, the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997); see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.").

On an inquest for damages, the plaintiff bears the burden of proof and must introduce sufficient evidence to establish the amount of damages with reasonable certainty. Transatlantic Marine, 109 F.3d at 111. See also Lenard v. Design Studio, 889 F. Supp. 2d 518, 538 (awarding no damages because plaintiff failed to demonstrate the amount of fines incurred that were attributable to defendant); Griffiths v. Francillon, No. 10-cv-3101 (JFB)(GRB), 2012 WL 1341077, at *2 (Jan. 30, 2012) (recommending that no damages be awarded because motion papers alone were insufficient to support an award of damages), adopted, 2012 WL 1354481 (E.D.N.Y. Apr. 13, 2012). A court may determine the appropriate damages based on affidavits and other documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d. Cir. 1989)). See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (leaving the decision of whether a hearing is necessary for determining damages to the discretion of the district court). See also Fed. R. Civ. P. 55(b)(2).

"In a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00-cv-4221 (RJH)(AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) (gathering cases; see also

Fermin, 93 F. Supp. 3d at 43 ("[B]y defaulting, Defendants have not contradicted Plaintiffs' reasonably specific allegations and credible affidavits, which sufficiently set forth the days and hours they worked for Defendants and the pay that Defendants gave Plaintiffs as compensation for that work.").

Because I find Plaintiff has demonstrated that Defendants are liable for FLSA and NYLL violations, it is appropriate to award him damages as supported by the evidence submitted for this inquest. See, e.g., ECF No. 61-4. Determining the appropriate amount of damages "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016). A court need not hold an evidentiary hearing to determine damages but must take the necessary steps to establish damages with reasonable certainty. Id.

### A.    Backpay Under FLSA and NYLL

The FLSA and NYLL require an employer to pay at least the statutory set minimum wage for each hour an employee works in any workweek. 29 U.S.C. § 206(a); 12 N.Y.C.R.R. § 146-1.1(a). Plaintiff sufficiently pleaded that Defendants violated the overtime provisions of both the FLSA and NYLL, but he is entitled to recovery under only one statute. See Hernandez v. Jrpac Inc., No. 14-cv-4176 (PAE), 2016 WL 3248493, at *31. (S.D.N.Y. June 9, 2016) ("Plaintiffs may not receive a double recovery of back wages under both the FLSA and NYLL.") (cleaned up).

Under New York and federal law, a court has discretion to award damages under whichever statute offers the greatest amount of relief. Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. 2018); see also 29 U.S.C. § 218(a). Because New York's minimum wage exceeds the federal rate, Plaintiff's damages

calculations will be governed by NYLL provisions. See Hernandez, 2016 WL 3248493, at *31 (awarding plaintiffs damages under NYLL "because of the higher minimum" and acknowledging that those damages "will subsume their award under the FLSA").

Both FLSA and NYLL require employers to pay their employees a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

### 1.    Plaintiff's Unpaid Minimum Wages

Plaintiff is entitled to backpay for unpaid minimum wages in the amount of $23,793.00, broken down as follows:

From October 1, 2017, through December 30, 2017, Plaintiff was paid at a presumptive hourly rate of $11.25. During that time, the applicable minimum hourly wage was $10.50. Thus, Plaintiff was paid in excess of the minimum wage and is not owed any backpay for that period.

From December 31, 2017, through December 30, 2018, Plaintiff was paid at a presumptive hourly rate of $11.25. During that time, the applicable minimum wage was $12.00. Thus, Plaintiff is entitled to backpay for that period of $1,560.00, equal to 52 weeks, multiplied by 40 hours, multiplied by an underpayment of $0.75 per hour.

From December 31, 2018, through December 30, 2019, Plaintiff was paid at a presumptive hourly rate of $11.25. During that time, the applicable minimum wage was $13.50. Thus, Plaintiff is entitled to backpay for that period of $4,680.00, equal to 52 weeks, multiplied by 40 hours, multiplied by an underpayment of $2.25 per hour.

From December 31, 2019, through March 15, 2020, Plaintiff was paid at a presumptive hourly rate of $11.25. During that time, the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to backpay for that period of $1,650, equal to 11 weeks, multiplied by 40 hours, multiplied by an underpayment of $3.75 per hour.

From March 16, 2020, through April 7, 2020, Plaintiff was not paid. During that time, the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to backpay for that period of $1,800.00, equal to 3 weeks, multiplied by 40 hours, multiplied by an underpayment of $15.00 per hour.

From April 8, 2020, through June 1, 2021, Plaintiff was paid at a presumptive hourly rate of $9.38. During that time, the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to backpay for that period of $13,488.00, equal to 60 weeks, multiplied by 40 hours, multiplied by an underpayment of $5.62 per hour.

From June 2, 2021, through July 19, 2021, Plaintiff was paid at a presumptive hourly rate of $12.50. During that time, the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to backpay for that period of $525.00, equal to 7 weeks, multiplied by 30 hours, multiplied by an underpayment of $2.50 per hour.

### 2. Plaintiff's Unpaid Overtime Wages

Plaintiff is entitled to backpay for unpaid overtime wages in the amount of $73,867.50, broken down as follows:

From October 1, 2017, through December 30, 2017, Plaintiff worked 63 hours per week, and the applicable minimum overtime hourly wage was $15.75. Thus, Plaintiff is entitled to backpay for that period of $4,709.25, equal to 13 weeks, multiplied by 23 hours, multiplied by $15.75.

From December 31, 2017, through December 30, 2018, Plaintiff worked 63 hours per week, and the applicable minimum overtime hourly wage was $18.00. Thus, Plaintiff is entitled to backpay for that period of $21,528.00, equal to 52 weeks, multiplied by 23 hours, multiplied by $18.00.

From December 31, 2018, through December 30, 2019, Plaintiff worked 63 hours per week, and the applicable minimum overtime hourly wage was $20.25. Thus, Plaintiff is entitled to backpay for that period of $24,219.00, equal to 52 weeks, multiplied by 23 hours, multiplied by $20.25.

From December 31, 2019, through March 15, 2020, Plaintiff worked 63 hours per week, and the applicable minimum overtime hourly wage was $22.50. Thus, Plaintiff is entitled to backpay for that period of $5,692.50, equal to 11 weeks, multiplied by 23 hours, multiplied by $22.50.

From March 16, 2020, through April 7, 2020, Plaintiff worked 52.5 hours per week, and the applicable minimum overtime hourly wage was $22.50. Thus, Plaintiff is entitled to backpay for that period of $843.75, equal to 3 weeks, multiplied by 12.5 hours, multiplied by $22.50.

From April 8, 2020, through June 1, 2021, Plaintiff worked 52.5 hours per week, and the applicable minimum overtime hourly wage was $22.50. Thus, Plaintiff is entitled to backpay for that period of $16,875.00, equal to 60 weeks, multiplied by 12.5 hours, multiplied by $22.50.

From June 2, 2021, through July 19, 2021, Plaintiff worked only 30 hours per week, and thus is not entitled to any overtime pay for that period.

## B. Spread-of-Hours Pay

Plaintiff is entitled to unpaid spread-of-hours pay in the amount of $14,490.00, broken down as follows:

From October 1, 2017, through December 30, 2017, Plaintiff worked six shifts per week exceeding ten hours a day, and the applicable minimum wage was $10.50. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $819.00, equal to 13 weeks, multiplied by 6 days, multiplied by $10.50.

From December 31, 2017, through December 30, 2018, Plaintiff worked six shifts per week exceeding ten hours a day, and the applicable minimum wage was $12.00. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $3,744.00, equal to 52 weeks, multiplied by 6 days, multiplied by $12.00.

From December 31, 2018, through December 30, 2019, Plaintiff worked six shifts per week exceeding ten hours a day, and the applicable minimum wage was $13.50. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $4,212.00, equal to 52 weeks, multiplied by 6 days, multiplied by $13.50.

From December 31, 2019, through March 15, 2020, Plaintiff worked six shifts per week exceeding ten hours a day, and the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $990.00, equal to 11 weeks, multiplied by 6 days, multiplied by $15.00.

From March 16, 2020, through April 7, 2020, Plaintiff worked five shifts per week exceeding ten hours a day, and the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $225.00, equal to 3 weeks, multiplied by 5 days, multiplied by $15.00.

From April 8, 2020, through June 1, 2021, Plaintiff worked five shifts per week exceeding ten hours a day, and the applicable minimum wage was $15.00. Thus, Plaintiff is entitled to spread-of-hours pay for that period of $4,500.00, equal to 60 weeks, multiplied by 5 days, multiplied by $15.00.

From June 2, 2021, through July 19, 2021, Plaintiff worked no shifts in excess of ten hours per day, and thus is not entitled to any spread-of-hours pay for that period.

### C.    Liquidated Damages

Under the FLSA and NYLL, a plaintiff who is owed minimum or overtime wages may recover an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a). Liquidated damages may also be assessed for spread of hours pay. See Reyes v. Cafe Cousina Rest. Inc., No. 18-cv-1873 (PAE)(DF), 2019 WL 5722475, at *6 (S.D.N.Y. Aug. 27, 2019) (awarding liquidated damages for unpaid spread-of-hours pay).

The court may reduce or deny liquidated damages if the employer can show that "the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing it was not a violation of [FLSA]." 29 U.S.C. § 260. Similarly, under NYLL, an employee is entitled to liquidated damages equal to the amount of the overtime pay "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a).

To establish "good faith" under the FLSA, an employer must show that it took "active steps to ascertain the dictates of the FLSA and . . . comply with them." Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)). "NYLL's willfulness standard does not appreciably differ from the FLSA's willfulness standard." Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d. Cir. 2011) (internal quotation marks and citation omitted).

Defendants defaulted, and therefore have made no showing of good faith to merit reducing or denying liquidated damages. See Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14-cv-10234 (JGK)(JLC), 2016 WL 4704917, at *15 (Sept. 8, 2016), adopted, 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016) ("Courts deem defendants' actions willful where they have defaulted . . . consequently, such defaulting defendants will have obviously made no showing of good faith.") (cleaned up).

Plaintiff may not, however, recover "duplicative liquidated damages for the same course of conduct" under both the FLSA and NYLL. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018). Accordingly, the Court recommends awarding Plaintiff liquidated damages under NYLL only. Plaintiff is entitled to an additional $112,150.50, consisting of 100% of his unpaid regular and overtime wages plus spread-of-hours pay.

### D.    Pre-Judgment and Post-Judgment Interest

New York law provides for an award of pre-judgment interest in addition to liquidated damages. N.Y. Lab. Law § 198(1-a); Underwood v. TAFSC Hous. Dev. Fund Corp., No. 18-cv-6664 (JPO), 2019 WL 5485211, at *5 (S.D.N.Y. Oct. 25, 2019) (citing Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999)). Pre-judgment interest is available only on actual damages, not liquidated damages. Id.

Under New York law pre-judgment interest is calculated at nine percent per year. N.Y. Lab. Law § 198(1-a); N.Y. CPLR § 5004. "Where damages are incurred at various times interest shall be computed upon all of the damages from a single reasonable intermediate date." Underwood, 2019 WL 5485211, at *5 (cleaned up). The "reasonable intermediate date" is often the midpoint of a plaintiff's employment. Id.

For the purposes of calculating pre-judgment interest for Plaintiff's damages, the Court selects August 26, 2019—the midpoint between Plaintiff's start date of October 1, 2017, and his end date of July 19, 2021—as a reasonable intermediate date from which to calculate pre-judgment interest. Thus, I recommend Plaintiff be granted pre-judgment interest on his total actual damages from August 26, 2019, at the rate of nine percent per year, until the date of entry of judgment.

Plaintiff has not made any request for or argument as to post-judgment interest on this motion. Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a

civil case recovered in a district court." Under this statute, an award of post-judgment interest is mandatory in any civil case where monetary damages have been awarded. Fermin, 93 F. Supp. 3d 19, 53; see, e.g., Begum v. Ariba Disc., Inc., No. 12-cv-6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case). Despite Plaintiff's failure to request post-judgment interest, I recommend he be granted it, calculated at the federal rate from the date the Clerk of Court enters judgment until the date Defendants pay. See Fermin, 93 F. Supp. 3d 19, 53 (recommending post-judgment interest despite plaintiffs' failure to request this relief).

### E.    Additional Interest

Plaintiff also requests that if any amount remains unpaid more than 90 days following judgment or the expiration of time to appeal, whichever is later, the total amount of judgment be automatically increased by 15 percent as required by NYLL § 198(4). Plaintiff's "request is in accordance with the provisions on the NYLL, and is therefore granted." Victor v. Sam's Deli Grocery Corp., No. 19-cv-2965 (SLC), 2022 WL 3656312, at *16 (S.D.N.Y. Aug. 25, 2022) (citing Dominguez v. Metro. Wireless Anandpur Inc., No. 21-cv-2240 (PAE) (KHP), 2022 WL 1164709, at *9 (Jan. 27, 2022), adopted, 2022 WL 421126 (S.D.N.Y. Feb. 11, 2022)).

### F.    Tools of the Trade

Plaintiff alleges that during the course of his employment Defendants required him to purchase three electric bicycles at a cost of $5,150 and a helmet at a cost of $45 to perform his delivery duties. Plaintiff has provided no documentary evidence or even detailed assertions regarding these expenses—such as why it was necessary for him to purchase multiple bicycles— that would allow the Court to establish the amount of damages with reasonable certainty.

In a 2010 wage and hour case in this district, the court, lacking a detailed explanation of plaintiffs' expenses that would enable it to evaluate the reasonableness of the amounts

purportedly spent on bicycles and repairs, chose to limit damages for bicycle expenses to $500 per year. Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08-cv-3725 (DC), 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010).

However, given the passage of time, the high number of hours Plaintiff worked each week, and the fact that the electric bicycles he purchased—which the Court notes are now *de rigueur* for delivery workers in New York City—are considerably more expensive than traditional bicycles, the Court does not find the amortized cost of approximately $1,355 per year to be excessive.[2]

### G.    Gratuities

Plaintiff alleges that Defendants violated NYLL by withholding approximately $770.00 in tips that he earned during his last week of work. While Plaintiff has provided no documentary evidence of these tips, it is an employer's responsibility to maintain such records. See 12 N.Y.C.R.R. § 146-2.18(c-d). In the default context, and lacking those records, Plaintiff's recollection alone is sufficient to establish his damages. See de Los Santos, 2020 WL 8549054, at *5. Accordingly, Plaintiff is entitled to $770.00 in unlawfully withheld gratuities.

## III.    Attorney's Fees and Costs

A prevailing plaintiff, under both federal and state statutes, is entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(4). Courts determine the

---

[2] Courts in this district have awarded substantial maintenance costs for delivery bicycles. See Changxing Li v. Kai Xiang Dong, No. 15-cv-7554 (GBD)(AJP), 2017 WL 892611, at *11 (Mar. 7, 2017), adopted, 2017 WL 1194733 (S.D.N.Y. Mar. 31, 2017) (awarding each plaintiff $1000 for a bicycle and $10 per week in repair costs). Delivery bicycles are also frequently stolen. See Feng Chen v. Patel, No. 16-cv-1130 (AT)(SDA), 2019 WL 2763836, at *3 (S.D.N.Y. July 2, 2019). Given this context, although Plaintiff has not attributed any portion of his expenses to maintenance or claimed his bicycles were stolen, an amortized rate of $1,355 per year is not unreasonable.

"presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay," "who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). The "presumptively reasonable fee" is the product of a reasonable hourly rate and the reasonable number of hours required by the case. See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff requests a total of $6,200.50 in fees for 19.43 hours of attorney and paralegal work. Attorney Clela Errington, an associate and the sole attorney who billed time for this case, has been practicing law since 2012. She requests an hourly rate of $350 for 17.03 hours of work.

Plaintiff also seeks fees for the 2.4 hours worked by an unnamed paralegal at a rate of $100 per hour.

### A.    Reasonable Rates

In determining reasonable fees for a particular case, courts rely on reasonable hourly rates prevailing in the same district for similar services provided by attorneys with comparable skill and experience. See Arbor Hill, 522 F.3d at 184; Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13-cv-02548 (KMW)(JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014) ("It is the fee movant's burden to establish the prevailing market rate.").

"Courts in this District have recently determined that a reasonable rate for senior attorneys handling wage-and-hour cases, in this market, typically ranges from $300 to $400 per hour." Wan v. YWL USA Inc., No. 18-cv-10334 (CS), 2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (cleaned up). But see, e.g., Ashkinazi v. Sapir, No. 02-cv-0002 (RCC)(MHD), 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) (awarding $425 per hour to a partner in a small firm specializing in employment law, with 26 years of experience). Higher rates may, however,

be awarded where they are "unopposed and awarded in the context of a default judgment." Wan, 2021 WL 1905036 at *6.

Given the passage of time and rising rates, this case's default posture, and Ms. Errington's decade of experience, I recommend that her hourly rate of $350 be awarded as requested.

"Hourly rates for paralegals of $100 to $150 per hour are typical for awards in this District." Inga v. Nesama Food Corp., No. 20-cv-0909 (ALC) (SLC), 2021 WL 3624666, at *14 (July 30, 2021), adopted, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021) (citing cases). Accordingly, I recommend that the paralegal's hourly rate of $100 be awarded as requested.

### B.    Reasonable Hours

When evaluating whether claimed hours are reasonable, "the district court should exclude excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997). An attorney who requests "court-ordered compensation . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

In support of their application, Plaintiff's attorney has submitted a billing invoice. See ECF No. 61-5. This time record reflects that Ms. Errington performed 17.03 hours of work and an unnamed paralegal performed 2.4 hours of work, for a total of 19.43 hours.

The number of hours reflected in the submitted timesheets are reasonable with respect to the work performed in this matter, and the Court has identified no inconsistencies or redundancies in counsel's timekeeping records. Accordingly, this Court finds that Plaintiff may

recover attorney's fees in the total amount of $6,200.50, representing $5,960.50 for Ms. Errington, and $240.00 for the paralegal.

### C.    Costs and Remedies

Plaintiff also seeks costs in the amount of $727.00, which consists of a $402 filing fee and $325 in process server fees. The Court finds these costs to be reasonable and comparable to other amounts awarded upon default judgment. See Romita v. Anchor Tank Lines Corp., No. 09-cv-09997 (DLC), 2011 WL 1641981, at *2 (S.D.N.Y. Apr. 29, 2011) (awarding $504 in court costs for filing and process server fees); Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Loc. Union No. 12A v. Trade Winds Envtl., No. 09-cv-01771 (RJH)(JLC), 2010 WL 8020302, at *6 (Dec. 23, 2010) (awarding $701.75 in court costs for filing and process server fees), adopted, 2011 WL 5843757 (S.D.N.Y. Nov. 18, 2011).

## CONCLUSION

I recommend that the Court find Defendants liable for $237,193.50 plus applicable interest, as follows:

(1)    $112,150.50 in back pay and spread-of-hours damages, plus nine percent prejudgment simple interest calculated from August 26, 2019, to the date of judgment;

(2)    $112,150.50 in liquidated damages;

(3)    $5,195.00 in damages for failure to reimburse Plaintiff for three electric bicycles and a helmet;

(4)    $770.00 in unpaid gratuities;

(5)    $6,200.50 in attorneys' fees; and

(6)    $727.00 in costs.

SARAH NETBURN
United States Magistrate Judge

DATED:    June 13, 2023
          New York, New York

\*            \*            \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).